FILED
United States Court of Appeals
Tenth Circuit

March 7, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellant,

v.

MIGUEL BUSTAMANTE-CONCHAS,

      Defendant - Appellee.

No. 14-2003
(D.C. No. 1:13-CR-02028-JAP-2)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **MATHESON**, and **BACHARACH**, Circuit Judges.

The government appeals the district court's order releasing Miguel

Bustamante-Conchas ("Bustamante") into the custody of a halfway house while he

awaits trial.  We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3145(c),

and we affirm.

---

[*]     This panel has determined that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

Bustamante was arrested in June 2013 for conspiracy to distribute 100 grams or more of heroin in violation of 21 U.S.C. § 846. Following his arraignment, and after gathering information about him, Pretrial Services recommended he be released from pretrial detention to a halfway house under strict conditions. However, applying the presumption in favor of detention, *see* 18 U.S.C. § 3142(e)(3)(A), the magistrate judge decided against that recommendation and ordered Bustamante detained.

Six months later, in December 2013, Bustamante appealed the magistrate judge's detention order to the district court. The court held a hearing, during which the parties proffered their positions but no testimony was given. Following the hearing, the district court granted Bustamante pretrial release to a halfway house with several conditions, including being kept on lockdown, tracked by GPS, restricted to no cell phone access, and limited to landline access for calls with his attorney only.

In its decision, the court first applied the statutory presumption in favor of detention pursuant to § 3142(e)(3)(A). The court concluded that Bustamante overcame this presumption, however, by finding: (1) he had no criminal history; (2) he has lived in the United States since 2007 and attained permanent resident status in 2012, which required careful vetting by the U.S. government; (3) he is married to a U.S. citizen; (4) there is no indication he has used illegal drugs or is on

prescription drugs; and (5) he operated an active business buying, repairing, and selling cars, earning approximately $5,000 per month.

The court then proceeded to evaluate the four factors outlined in 18 U.S.C. § 3142(g) to decide whether there were conditions of release that would reasonably assure Bustamante's appearance in court and the safety of the community: (1) the nature and circumstances of the offense; (2) the weight of evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger the defendant would present to the community if released.

Under the first factor, the court found that the offense charged was conspiracy to distribute large amounts of heroin, but that there was no evidence of violence or that Bustamante possessed a weapon. Under the second factor, the court found there was substantial circumstantial evidence, but no direct evidence, that Bustamante was involved in the heroin distribution enterprise. Under the third factor, the court found that Bustamante has no prior criminal history, has substantial family ties to the United States, had continuous employment before his arrest, has resided in Albuquerque for seven years, and has not abused drugs or alcohol. Finally, under the fourth factor, the court took note of the government's "understandable" concern that Bustamante was allegedly the organizer and leader of the heroin distribution enterprise, thus creating a danger to the community if released because he could continue to direct the enterprise's operations. Aplt. App. Vol. I at 25.

Based on the record, the court found the government had established by a preponderance of the evidence that Bustamante was a flight risk because of his ties to Mexico, where his adult children live and where he traveled frequently in the year prior to his arrest. The court also found the government had established by clear and convincing evidence that Bustamante was a danger to the community if released "on other than highly restrictive conditions" because of his alleged role in the criminal enterprise. *Id.*; *see also United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003) ("[T]he government must prove risk of flight by a preponderance of the evidence and it must prove dangerousness . . . by clear and convincing evidence."). However, the court was satisfied that the halfway house, combined with additional conditions, would sufficiently alleviate the risk of flight or danger to the community.

Lastly, the district court discussed Bustamante's length of detention as an additional factor in its decision. The court expressed concern over the fact that he will have been detained for over a year before his trial, and emphasized that the government's failure to produce discovery "in a useful, meaningful manner" was largely to blame for the delay. Aplt. App. Vol. I at 26. This, the court found, implicated potential due process concerns. The court therefore granted Bustamante pretrial release to a halfway house with restrictive conditions. The government then moved to stay Bustamante's release, which we granted pending the outcome of this appeal.

II. DISCUSSION

We review mixed questions of law and fact de novo but review the district court's underlying findings of fact for clear error. *United States v. Cisneros*, 328 F.3d 610, 613 (10th Cir. 2003). The district court's ultimate pretrial release decision is a mixed question of law and fact that we review de novo. *Id*.

A defendant cannot be detained pending trial unless the court finds that no conditions, or combination of conditions, will reasonably assure the appearance of the person and the safety of the community. 18 U.S.C. § 3142. Generally, courts apply a presumption in favor of pretrial release. *Id*. § 3142(b). But there is a presumption in favor of detention—*i.e.*, that no conditions will reasonably assure the appearance of the defendant and the safety of the community—when a defendant is charged with a drug offense which the court finds is supported by probable cause and for which the maximum term of imprisonment is ten years or more, as Bustamante has been in this case. *See id*. § 3142(e)(3)(A).

Once the presumption is invoked, the burden of production shifts to the defendant. *United States v. Stricklin*, 932 F.2d 1353, 1354-55 (10th Cir. 1991) (per curiam). Nevertheless, the burden of persuasion always remains on the government to establish that the defendant should be detained as a flight risk and a

- 5 -

danger to the community. *Id.* In deciding whether this is so, the district court is required to consider the four factors outlined in § 3142(g).[1]

Because the district court found there was probable cause to believe Bustamante committed an offense for which a term of imprisonment of 10 or more years is prescribed, a rebuttable presumption arises that no conditions assure his appearance in court and the safety of the community. But Bustamante overcame this presumption by producing evidence of his lack of criminal history, his permanent resident status in the U.S., and his family ties to the U.S. *See Stricklin*, 932 F.2d at 1355 ("The defendant's burden of production is not heavy, but some evidence must be produced.").

The government contends, however, that contrary to the district court's conclusion there are no conditions that will reasonably assure Bustamante's appearance and the safety of the community. The government makes several allegations that the conditions the district court imposed on Bustamante are insufficient. For example, the government contends that Bustamante would remain a danger to the community because he frequently used the telephone to direct the activities of the heroin distribution enterprise. It claims the district court's restriction

---

[1]    We note that our review is limited to the assertions alleged by each of the parties without the benefit of testimony or evidence. A more fully developed record would have made our task of assessing Bustamante's risk of flight and danger to the community under the conditions imposed far easier. In particular, testimony from Pretrial Services regarding why it believed the arrangements at the halfway house were adequate safeguards would have been especially useful to our review.

on Bustamante using cell phones or a landline other than to call his attorney are impractical and would allow him to continue his criminal operations. In support of this claim, the government argues that other halfway house residents are allowed to use cell phones and that the staff does not monitor their use. Thus, the government asserts that Bustamante would be able to use other residents' cell phones or employ other residents to do his bidding.

We are not convinced by the government's allegations that the conditions the district court imposed on Bustamante will not reasonably assure the safety of the community. The district court ordered, consistent with Pretrial Services' previous recommendation based on its investigation, that Bustamante be released with considerable restrictions on his movement and communications. The district court added further conditions—that Pretrial Services did not recommend—by absolutely restricting Bustamante from using any kind of telephone except to call his attorney. While each resident's cell phone may not be monitored, there is no evidence the halfway house is inadequately staffed with people to oversee Bustamante's activities in general. And the landline phone is indeed monitored. We thus conclude the government has not demonstrated the need for pretrial detention in order to safeguard the community.

Nor has the government shown that the conditions the district court imposed on Bustamante will not alleviate his risk of flight. The government argues that because the doors to the halfway house are often unlocked and are not guarded by

armed security—though staff members are stationed there—the conditions of the halfway house allow for an easy escape. The government also claims that the GPS devices used at the halfway house are easily removed with scissors or a knife. It further notes that five residents have absconded within the last year, though the government did not say whether those absconders had GPS devices or were on lockdown (or both). The government thus contends that given the ease with which Bustamante could escape and the fact that the halfway house is only a four-hour drive to Mexico, combined with the serious nature of the charges against him, the conditions at the halfway house do not adequately protect against his risk of flight.

While we agree Bustamante presents a flight risk, the government supports its claim that the restrictive conditions in the halfway house are insufficient by identifying characteristics of the house and speculating on scenarios that could conceivably occur. The government does not address the fact that if Bustamante were to succeed in cutting off his GPS monitor, authorities would be notified immediately. The government does not assert that anyone in the halfway house under 24-hour lockdown with a GPS monitor has failed to appear for court. And yet it is the government that bears the burden of persuasion to show that those conditions cannot reasonably assure Bustamante's appearance in court. Between the lockdown and GPS monitoring, the conditions the district court imposed on Bustamante are unquestionably rigorous to protect against his risk of flight. If effective, such conditions would reasonably assure his appearance. We are not convinced the

government's proffers are enough to carry its burden of showing that those conditions would be ineffective.

In sum, it is evident that the district court considered all of the factors relevant to pretrial release decisions listed in § 3142(g), received proffers as to those factors listed in § 3142(g)(3)(A), and appropriately weighed them against the remaining factors in favor of Bustamante's release, subject to various conditions. We conclude the district court did not err in releasing Bustamante to a halfway house under the restrictive conditions it imposed.

Accordingly, the district court's pretrial release order is affirmed.

Entered for the Court
Per Curiam

No. 14-2003, United States v. Bustamante-Conchas

**HARTZ**, Circuit Judge, concurring:

I join the order and judgment. I add only one comment. Even if our review is de novo, it is appropriate to defer to fact-finding by the district court. It is important to me that the district court credited the expert opinion of Pretrial Services regarding the adequacy of the conditions at the halfway house.